UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ASHLEY DAVIS, | ) No. ED CV 11-02043-VBK |
| | ) |
| Plaintiff, | ) MEMORANDUM OPINION |
| | ) AND ORDER |
| v. | ) |
| | ) (Social Security Case) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") properly

>           considered the November 2009 Mental Residual Functional Capacity Assessment by State Agency review physician H. Amado, M.D.
> 2.   Whether the ALJ properly considered the October 2010 opinions and treatment records of Dr. Marcelino Calimlim, Jr., M.D., a treating physician;
> 3.   Whether the ALJ properly considered the October 20, 2009 opinions of Dr. Edward P. Pflaumer, Ph.D., a clinical psychologist; and
> 4.   Whether the ALJ properly considered the treatment records of Connie McDonald, a Licensed Marriage and Family Therapist.

(JS at 3.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

**I**

**THE ALJ PROPERLY CONSIDERED THE NOVEMBER 2009 ASSESSMENTS**

**OF PLAINTIFF'S MENTAL STATE**

**BY THE STATE AGENCY REVIEW PHYSICIAN, DR. AMADO**

In Plaintiff's first issue, she contends that the ALJ failed to properly assess her non-exertional limitations based on her mental state. She cites the Mental Residual Functional Capacity Assessment ("RFC") of State Agency psychiatrist Dr. Amado (AR 265-270), concluding that the ALJ failed to incorporate significant limitations assessed by Dr. Amado regarding her mental functioning. (See JS at 4: "Limitations not encompassed within the RFC or hypothetical

questions.")

In making her argument, Plaintiff cites the following propositions: that Dr. Amado's opinions are uncontradicted (JS at 4); that the ALJ failed to give clear and convincing reasons for rejecting Dr. Amado's opinions (JS at 6); and that the ALJ failed to consider all relevant evidence in reaching his conclusion as to Plaintiff's mental RFC. (JS at 7-8.)  Plaintiff charges that Dr. Amado's conclusions were not at all incorporated into the mental RFC assessment. (JS at 8.)  The Court's examination of the record indicates that none of these propositions hold true.

**A.   Applicable Law.**

In evaluating mental impairments, 20 C.F.R. §404.1520a(c)(3)(4) and §416.920a(c)(3)(4) mandate that consideration be given, among other things, to activities of daily living ("ADLs"), social functioning; concentration, persistence, or pace; and episodes of decompensation.  These factors are generally analyzed in a Psychiatric Review Technique Form ("PRTF").  The PRTF is used at Step Three of the sequential evaluation to determine if a claimant is disabled under the Listing of Impairments; however, the same data must be considered at subsequent steps unless the mental impairment is found to be not severe at Step Two.  See SSR 85-16.

20 C.F.R. §§404.1520a(c)(1) and 416.920a(c)(1) require consideration of "all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other

treatment."[1]

SSR 85-16 suggests the following as relevant evidence:

> "History, findings, and observations from medical sources (including psychological test results), regarding the presence, frequency, and intensity of hallucinations, delusions or paranoid tendencies; depression or elation; confusion or disorientation; conversion symptoms or phobias; psycho-physiological symptoms, withdrawn or bizarre behavior; anxiety or tension. Reports of the individual's activities of daily living and work activity, as well as testimony of third parties about the individual's performance and behavior. Reports from workshops, group homes, or similar assistive entities."

It is also required under §404.1520a(c)(2) and §416.920a(c)(2) that the ALJ must consider the extent to which the mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis" including "such factors as the quality and level of [] overall functional performance, any episodic limitations [and] the amount of supervision or assistance [] require[d]."

Pursuant to the September 2000 amendments to the regulations which modify 20 C.F.R. §404.1520a(e)(2) and §416.920a(e)(2), the ALJ

---

[1] 20 C.F.R. §404.1545(c) and §416.945(c) also require consideration of "residual functional capacity for work activity on a regular and continuing basis" and a "limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting."

4

is no longer required to complete and attach a PRTF. The revised regulations identify five discrete categories for the first three of four relevant functional areas: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decomposition. These categories are None, Mild, Moderate, Marked, and Extreme. (§404.1520a(c)(3), (4).) In the decision, the ALJ must incorporate pertinent findings and conclusions based on the PRTF technique. §404.1520a(e)(2) mandates that the ALJ's decision must show "the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section."

The Step Two and Three analyses (see Decision at AR 53-54) are intended to determine, first, whether a claimant has a severe mental impairment (Step Two), and if so, whether it meets or equals any of the Listings (Step Three). It is also required under §404.1520a(c)(2) and §416.920a(c)(2) that the ALJ must consider the extent to which the mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis" including "such factors as the quality and level of [] overall functional performance, any episodic limitations [and] the amount of supervision or assistance [] require[d]."

These findings and conclusions are relevant to the Step Two and Three analysis of whether a claimant has a severe mental impairment, and if so, whether it meets or equals any of the Listings. (See 20 C.F.R. Part 4, subpart p, App. 1.) The discussion in Listing 12.00,

"Mental Disorders," is relevant:

> "The criteria in paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations in paragraphs B and C must be the result of the mental disorders described in the diagnostic description, that is manifested by the medical findings in paragraph A.
>
> In Listing 12.00C, entitled 'Assessment of Severity,' it is stated that, 'we assess functional limitations using the four criteria in paragraph B of the Listings: Activities of daily living; social functioning; concentration; persistence, or pace; and episodes of decompensation. Where we use 'marked' as a standard for measuring the degree of limitation, it means more than moderate but less than extreme."

Social Security Ruling ("SSR") 96-8p makes the same point in distinguishing evidence supporting a rating of mental severity at Step Two, a Listing level impairment at Step Three, and the determination of an individual's Mental RFC at Step Four.

Thus, an ALJ utilizing the Five Step sequential evaluation inquiry, as the ALJ did in this case, must determine the existence of a severe mental impairment at Step Two, and whether at Step Three a severe mental impairment meets or equals any of the listed impairments. In making this determination, the ALJ utilizes the methods discussed above to rate the degree of functional limitations related to mental impairments. The existence of moderate limitations

6

1  found at Steps Two and Three do not necessarily equate to a finding of
2  a disabling RFC.  That is because the Step Two and Step Five
3  determinations require that there be different levels of severity of
4  limitations, such that the satisfaction of the requirements at Step
5  Two does not lead to the conclusion at Step Five that the claimant has
6  satisfied the requirements for disability.  See Hoopai v. Astrue, 499
7  F.3d 1071 (9th Cir. 2007).

**B.   Analysis**.

While Plaintiff alleges that the ALJ failed to even acknowledge the conclusions of Dr. Amado, the State Agency physician, the decision reflects just the opposite; i.e., Dr. Amado's conclusions were considered. ("In determining the claimant's mental residual functional capacity, the undersigned has given significant weight to the opinions of the State agency medical consultants who found the claimant could perform simple, repetitive tasks, ..." [AR 18, exhibit citations omitted].)

Further, and again contrary to Plaintiff's contention, the ALJ's consideration of Dr. Amado's opinion, or rejection of any part of it, does not come under the "clear and convincing" standard which must be followed for treating physicians. (See JS at 4, citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). But in any event, as the ALJ articulated, "significant weight" was given to Dr. Amado's November 2009 opinion, along with a concurring May 2010 opinion of another reviewing psychiatrist, Dr. Brooks. (AR 293-294.)  This led the ALJ to conclude that Plaintiff is capable of performing simple, repetitive tasks. (AR 18.)

Moreover, as Plaintiff acknowledges, the applicable standard

requires an ALJ to consider all relevant evidence in determining a plaintiff's RFC. That also occurred in this case. Plaintiff fails to reference the ALJ's consideration of the opinion of Dr. Goldman, a clinical psychiatrist, who performed a consultative psychological examination ("CE") on October 10, 2009. (AR 261-264.) Dr. Goldman diagnosed Plaintiff with malingering. The ALJ concluded that, "Given the claimant's sub-optimal effort during testing and her lack of more substantive mental health treatment, this opinion is consistent with the objective evidence." (AR 18.) The objective evidence in the record includes observations of a claims representative who met with Plaintiff in 2009 and made observations that Plaintiff had no difficulty answering questions, understanding, or concentrating (AR 111-112); and, as noted, the findings of both State Agency psychiatrists (Drs. Amado and Brooks) that Plaintiff is not mentally disabled and is capable of work which is consistent with the mental RFC assessed by the ALJ. While Plaintiff complains that neither the hypothetical questions to the vocational expert ("VE") or the mental RFC include certain moderate limitations found by Dr. Amado, she glosses over the fact that Dr. Amado nevertheless concluded that Plaintiff was not precluded from doing unskilled work. (AR 267.) It must be underscored that the ALJ's function at Steps Two and Three of the sequential evaluation process is to evaluate a claimant's functional limitations in defined areas, and thereafter, to articulate a mental RFC which represents the most that a claimant can do, despite those impairments. Since that is what occurred in this case, and Plaintiff has failed to identify any error with regard to that analysis, Plaintiff's first issue must be rejected.

II

**THE ALJ PROPERLY CONSIDERED THE OPINION**

**OF TREATING PHYSICIAN DR. CALIMLIM**

In Plaintiff's second issue, she contends that the ALJ improperly failed to evaluate the opinion of her treating physician, Dr. Calimlim.

What Plaintiff cites is a document entitled "Authorization to Release Medical Information" which Dr. Calimlim filled out and signed in October 2010. In a "check-the-box" fashion, he indicated that Plaintiff is unable to work; and, that Plaintiff has limitations that affect her ability to work or participate in education or training. (AR 298.) The ALJ rejected these conclusions, stating the following:

> "The undersigned has read and rejected the disability statement indicating the claimant was unable to work (Ex. B20F, p. 1). The undersigned finds this conclusion has no probative value. The statement contained no specific limitations and was not supported by the objective medical evidence as discussed above. As an opinion on an issue reserved to the Commissioner, this statement is not entitled to controlling weight and is not given special significance pursuant to 20 CFR 416.927(c) and SSR 96-5."

(AR 18.)

Plaintiff's contention is that the ALJ's rejection of Dr. Calimlim's conclusions was erroneous, and also, that the ALJ failed to account for treatment records which she concludes support Dr. Calimlim's conclusions.

With regard to the type of form which Dr. Calimlim completed by

9

checking off boxes, these "check-off" forms are disfavored, especially when they are unsupported by objective findings. See Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996), citing Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983). See also Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

As noted, Plaintiff also claims that the ALJ failed to take account of treatment notes which, she suggests, are consistent with the check-the-box form. In making this argument, Plaintiff fails to identify any specific treatment forms, or in what manner they are supposedly consistent with the check-the-box form. But the Commissioner does that in his portion of the JS. First, Dr. Calimlim's statement fails to include any finding of impairment, any diagnosis, or any reference to objective test results. Had Plaintiff cited to the Court any treatment or diagnostic records which supported Dr. Calimlim's check-the-box form, her argument might have more force. But, and as with the first issue, the conclusions reached after examining treatment records lead to the opposite conclusion. For example, in February 2010, Dr. Calimlim explicitly refused a request from Plaintiff that he provide a written statement that she was unable to work, stating he "cannot make that judgment." (AR 287.) This would appear to be in direct contradiction to Dr. Calimlim's later check-the-box form, but Plaintiff has failed to take the opportunity to explain this fatal discrepancy, instead simply relying upon her arguments as made in her original contentions. (JS at 27.) But even further, when one looks at Dr. Calimlim's treatment notes, the indication is of benign findings which fail to support the check-the-box form. For example, the objective physical examination findings were consistently in normal range. (AR at 182, 184, 186, 190, 216,

287, 289.) In any event, Plaintiff contends that she is disabled based on mental impairments, but fails to explain the significance of Dr. Calimlim's treatment, which consisted of addressing her physical complaints. Dr. Calimlim never provided a clinical assessment or any testing of Plaintiff's mental status.

The Court sees no need to delve further into a summary of the record, which clearly indicates that Plaintiff has no severe physical impairments; that treatment records indicate that she had a stable mental condition; that while she was in school, she received average grades; that she often reported that she was doing fine, from a mental health point of view; and that Dr. Calimlim's check-the-box form was inconsistent with her own statements which are contained in the record. (See, generally, AR 182, 184, 190, 216 and 262.)

For the foregoing reasons, the Court finds that Plaintiff's second issue is without merit.

### III

### THE ALJ DID NOT FAIL TO PROPERLY CONSIDER

### THE OPINIONS OF DR. PFLAUMER

On October 20, 2009, Plaintiff was examined by psychologist Dr. Pflaumer at the request of her County Welfare Agency. (AR 258-260.) Plaintiff alleges that the ALJ failed to account for Dr. Pflaumer's diagnostic impressions of major depressive disorder, recurrent, mild; and generalized anxiety disorder, rendered on Axis I, and mild mental retardation at Axis II. (AR 260.)

Plaintiff fails to discuss other aspects of Dr. Pflaumer's report. He recommended that she be declared eligible for Regional Center services due to her diagnosis with mild mental retardation;

1  that she be referred for vocational training and placement; and that
2  she continue to receive mental health treatment related to symptoms of
3  depression and anxiety. (AR 260.)  In an examination, she indicated to
4  Dr. Pflaumer that she had a few friends and good social skills and
5  that she was anxious being around other people but would be able to
6  get along with others in a workshop setting. (AR 259.)  She graduated
7  from high school in May 2006 with a regular diploma though she had
8  previously received services for learning disability and had spent the
9  last three years of her high school in home study so she could take
10 care of a baby that she had borne at age 15. (AR 258.)  She had taken
11 business classes through both Job Corps and Regional Opportunity
12 ("ROP"), which she indicated were easy for her (AR 259), and after
13 finishing ROP, she worked at a department store and enjoyed that
14 although she had been terminated after five months. (AR 259.)  As Dr.
15 Pflaumer noted, Plaintiff had no indication of any suicidal ideations,
16 hallucinations, delusions or paranoia; she was not destructive or
17 self-injurious; she had no significant behavioral problems; and her
18 feelings of depression were mostly linked to feeling abandoned by her
19 baby's father. (Id.)  She was able to focus her attention, listen to
20 and understand instructions, care for herself, help with household
21 chores, cook meals, communicate clearly, and get around by herself
22 using public transportation. (Id.)

23      Despite all of this, Plaintiff argues that Dr. Pflaumer's opinion
24 contradicted Dr. Goldman's opinion rendered ten days earlier that
25 assessed malingering. (JS at 30, citing AR 261-64.)  The Court fails
26 to understand this argument.  In any event, the critical issue is
27 whether Dr. Pflaumer's report is inconsistent with the mental RFC
28 assessed by the ALJ.  Plaintiff was able to focus attention, and

listen to and understand instructions, according to Dr. Pflaumer. (AR 259.) There are indicia in the test results which support the ALJ's finding that Plaintiff malingered when she was examined by Dr. Goldman, who was assessing Plaintiff's claim for SSI benefits, as against her visit with Dr. Pflaumer, where she was seeking county welfare services. In any event, the ALJ's notation regarding Dr. Goldman's conclusion that she malingered was relevant only to his findings as to Plaintiff's credibility. Plaintiff does not make any assessment of error as to the credibility finding. Essentially, Plaintiff fails to identify anything in Dr. Pflaumer's report which indicates that she would not be able to perform work involving simple repetitive tasks. Plaintiff points to nothing which indicates any error with regard to the outcome of the decision. If any error exists, it was harmless. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).

**IV**

**THE ALJ PROPERLY CONSIDERED THE TREATMENT RECORDS OF**

**CONNIE McDONALD, A LICENSED MARRIAGE AND FAMILY THERAPIST**

In Plaintiff's final issue, she asserts that the ALJ failed to properly consider the records of Ms. McDonald, a licensed marriage and family therapist, who should have been evaluated not as a treating source, but as "other source" as required by the regulations. (See 20 C.F.R. § 404.1513(d).)

Plaintiff visited Ms. McDonald from September 2008 to August 2009. (AR 218-228, 233-237, 247-257, 318-335.) But, Ms. McDonald, as a marriage and family therapist, was not an "acceptable medical source" who could offer an opinion under the Social Security

regulations. (See 20 C.F.R. § 416.913(a), (d). As an "other source," who offers an opinion as to a claimant's functional limitations, the ALJ must address it and provide germane reasons to reject it. But here, Ms. McDonald failed to provide any opinion as to Plaintiff's work-related functional limitations. The Court fails to understand what it is regarding Ms. McDonald's opinions that the ALJ failed to address or rejected. Plaintiff does not cite the Court to any evidence such as clinical testing or other objective evidence in Ms. McDonald's progress notes, other than two notations in which Plaintiff told Ms. McDonald that she had panic attacks and was depressed. But she also told Ms. Mcdonald that she was doing better, that she hoped to get out more, that she was attending driving school to get a driver's license, that she was applying for jobs and that she had a lot of job interviews, that she had moved into an apartment with one of her friends, and that she planned to move into her own apartment with her son. All of these treatment notes were considered by the ALJ. (See AR 17, citing AR 218.) In any event, much of these progress notes contain Plaintiff's subjective statements, which the ALJ did address in finding a lack of credibility or reliability, which Plaintiff does not here challenge.

The Court finds no error with regard to Plaintiff's fourth issue.

The decision of the ALJ will be affirmed. The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED.**

DATED: October 10, 2012          /s/
                                 VICTOR B. KENTON
                                 UNITED STATES MAGISTRATE JUDGE

14